STATE ex rel. COM'RS OF LAND
OFFICE v. RAINBOLT et al. ·

Nos. 32308–32313. Dec. 23, 1946.

*175 P. 2d 325.*

Everett H. Welborn and Richard A. Jackson, both of Oklahoma City, for plaintiff in error.

Ash & Bailey, of Cordell, for defendant in error John B. Rainbolt.

DAVISON, J. For the purpose of submitting the questions involved therein to this court for decision, six separate appeals from the district court of Washita county have been consolidated herein. When filed in this court they were numbered from 32308 to 32313, both inclusive. These actions were all instituted by plaintiff in error to recover on notes and foreclose real estate mortgages on land belonging to certain defendants whose names are not important herein. For the purpose of identifying the separate actions, however, they may be called the McCullough, the King, the Cain, the Stubblefield, the Crater, and the Froese cases.

In each of these foreclosure cases, the trial court allowed one John B. Rainbolt and his attorneys separate fees to compensate them for their services and expenses in connection with documents designated as "supplemental final reports" filed by the said Rainbolt as receiver and approved by the court. Plaintiff in error, hereinafter referred to merely as "appellant" has perfected appeals from said orders approving said reports, allowing said fees and discharging said receiver. Only the allowance of fees is challenged. It is urged that such allowance was error on the ground that under the record in these cases defendant in error, hereinafter referred to both as "Rainbolt" and "the receiver" was not entitled to any compensation for himself or his attorneys.

The principal fact relied upon by the appellant to sustain its position is that at the time Rainbolt was appointed receiver in the foreclosure cases he was regularly employed as an appraiser for the State School Land Department, and in accordance with said department's previous custom of using its appraisers as receivers in its foreclosures when feasible, it was understood as a condition of his appointment in each of the cases that Rainbolt would act without any compensation as receiver and would use members of the School Land Department's legal staff as his attorneys in the receivership matters. That Rainbolt was appointed under such an arrangement and operated thereunder until September 1, 1943, is not seriously disputed. On the latter date, however, he resigned his position as appraiser for the School Land Department. Final receiver's reports, in which only the total sums of the receiver's receipts and disbursements were shown, had previously been filed on his behalf by one or more attorneys for the School Land Department in each of the foreclosure cases. When his employment by said department terminated all the cases were still pending and no further action had been taken to secure their approval by the court on Rainbolt's discharge as receiver. As a result, he continued to act in that capacity after his official connection with the School Land Department had ended.

The method followed by Rainbolt in making his receiver's report was one that had been prescribed and customarily used by the School Land Department for all such receiverships and in the findings of fact and conclusions of law the trial court made on March 22, 1945 in connection with the orders appealed from, it was stated in part as follows:

"There seemed to be no definite rules or system followed in the manner in which the receiver operated. He rented the farms under his control as receiver to the party for the time, and under the terms that he deemed best, collected the rents when possible and expended such sums from the funds in his possession as receiver as his judgment dictated, usually without any permission of the court being requested, and either at his own convenience or on request of the School Land Department sent in the amount of funds in his hands, less expenses incurred, to the department. These seem to be designated by the department as intermediate reports for the use of the School Land Department only. The department at irregular intervals, two or three years apart, sometimes longer, prepared a report for the receiver to sign, and this was filed in court . . .

"In fact, it seems that the School Land Department, in order to save trouble and time, had mimeograph form prepared for all the final reports of the receivers. In these mimeographed forms, the only thing left to be filled in was the total amount collected by the receiver and the total amount expended, and a blank for the receiver's name."

About the time of Rainbolt's resignation, as aforesaid, the methods used in making these receiver's reports and the reports themselves came under the scrutiny of the State Examiner and Inspector on an audit of the School Land Department. From said Examiner's office criticism was directed at the way these receivership cases had been handled, and especially the filing of receiver's final reports without itemization of the receipt and expenditure totals shown thereon. As a result, after relinquishment of his official position with it, the School Land Department demanded that Rainbolt, as receiver in the cases in question, supplement the final reports theretofore filed therein with itemized reports. Rainbolt did not comply with said demand. Then, on request of the department, the court issued orders in the cases requiring him to file such reports. The events which then transpired until the ultimate filing of the supplemental reports hereinbefore mentioned, as set forth in the trial court's findings, were as follows:

"On his refusal to file the reports within the time specified in the order, on petition of the department, a citation was issued to the receiver to show cause why he should not be held in contempt of the court. The receiver, in

response to the order to show cause, testified, in substance that at all times during the receivership that he made full report of his receivership to the department, and to the attorney furnished by the department and that from the report sent in by him, the department could, if it so desired, from the records in its possession, make a complete and sufficient report of his proceedings as receiver; that at that time he was receiver in at least fifty cases, which were undisposed of in his district, and had been receiver in some of these cases over a period of ten or twelve years; that to comply with the plaintiff's request and the court's order would take months of his time; that he kept no regular books but that the data of each case had been sent in to the department in his intermediate reports; that to make the reports, he would have to make numerous trips to different tenants, make entirely new records, all at his own expense, which he could ill afford to do. When asked by the court if he was willing to make the supplemental reports if reasonable expenses were allowed him for oil and gas for his car, for his time expended, and compensation to an attorney he might employ in preparing the report, representing him in the matter, he stated that he was. The receiver was thereupon instructed by the court to proceed immediately to employ attorneys of his own choosing and make and file the reports. The attorneys for the School Land Department were present in court and participated in the hearing and made no objections to the order of the court in so instructing the receiver. Pursuant to this order . . . and in due time, these reports were filed."

The propositions advanced in support of appellant's position are set forth in its brief as follows:

"I. Receiver is not entitled to a fee where, as an employee of a party to the action, compensation is waived at the time of his appointment.

"II. Receiver is not entitled to a fee where said receiver is a public official on a salary and expense account paid by the state, when appointment is made conditioned upon said official serving as receiver without fee.

"III. Said receiver is not entitled to a fee for himself or his attorney for services performed after the original action has been concluded and the receiver has held office by reason of his failure to make a report.

"IV. Receiver is not entitled to a fee from trust funds for himself or his attorney in making a supplemental report where the necessity for such report is occasioned by the negligence of the receiver in making a true accounting and where the receiver has withheld funds belonging to the trust."

The authorities cited by appellant for its first two propositions above quoted have no application to the case at bar, for, as shown from the facts hereinbefore set forth, Rainbolt, at the time he performed the services for which the fees in question were allowed, was no longer an appraiser for the State School Land Department, and was in no respect a "public official" within the rule urged by appellant to disqualify him from earning such fees. Nor do we think he was then bound by the understanding or tacit agreement not to claim such fees under which the trial court found he originally accepted the appointment as receiver in these cases, because the situation had then changed and he was no longer receiving any salary, expenses, or other consideration from the state or any department or division of the state administration. If Rainbolt's resignation as appraiser had not been accepted or he had been kept in the employ of the State School Land Department until all the duties required of him in connection with the receivership had been performed so that there would have been no failure of the consideration or change in the conditions under which Rainbolt agreed to assume such extra duties, then appellant's argument might be entitled to serious consideration, but under the circumstances of this case it is not.

Under its third proposition appellant seems to attach particular significance to the fact that Rainbolt continued to perform the duties of a receiver after the necessity for a receiver in the cases involved had ceased. They say that his

discharge by the court had been delayed by his refusal to file complete reports. The record bears out this contention to a certain degree, but this fact demonstrates no culpable neglect or fault on the part of Rainbolt. The evidence supports the conclusion that for a time after the necessity for a receiver in these cases had ceased, Rainbolt continued in that position merely because he had not been discharged and knew of little else he could do. It was not a part of his duties under the arrangement by which he accepted such appointments to take the initiative in presenting his final reports to the court and obtaining his discharge as receiver in said cases. As between Rainbolt and the department, that was the duty of the department or its attorneys who had procured his appointment. The most likely explanation of Rainbolt's continuing as receiver in said cases after his initial final reports had been filed and ordinarily his administration of the receivership properties would have been over (prior to the State Examiner's audit) is that said reports simply had not been brought to the attention of the court. While it is true that some delay in the closing up of these receiverships probably resulted from Rainbolt's failure or refusal to file the supplemental final reports until he had been assured by the court that he would receive compensation for his services and reimbursement for his expenses in doing this work, yet in the trial court's opinion he was justified in such refusal. This was extra work or a repetition of work he had previously done, not covered by the original arrangement, and would probably never have been required had it not been for the investigation by the State Examiner. The evidence shows that in these cases, Rainbolt had made itemized reports to the department in the form of "intermediate reports" from which the attorneys for the department transferred only the totals or receipts and expenditures to the final reports they filled out and filed for him in the cases. The evidence further shows that this had been the practice of the department pursuant to which many cases in which Rainbolt and other receivers in School Land Department foreclosures (who were also employees of the department) had been closed. After Rainbolt had delivered to the department these "intermediate reports" and they had at least tacitly been approved by its attorneys as the basis for the so-called final reports they filed for presentation to the court, we cannot see that he was derelict in his duty to the department in failing to preserve his personal records of the receivership any longer, nor do we think he was going beyond his rights or just deserts when he demanded compensation and expense money for making up these additional reports that the evidence tends to show had not been required of such receivers in the past.

Under its fourth and last proposition appellants assert that "where a receiver fails to make a true report, and where he has failed and refused to keep any records, and refuses to give any information concerning the handling of his trust funds, then any expense incurred in an accounting must be paid out of the private fortune of the receiver". This statement may be true as an abstract proposition, but in our opinion it is not particularly applicable to the facts of this case. The record establishes no deliberate falsification or omission in the information Rainbolt furnished the department concerning the receiverships in question. Nor does it establish that he wholly failed or refused to make and tender records that apparently had been deemed sufficient by the department until they were brought in question by the State Examiner. On the other hand, there is evidence tending to show that he had made full and complete disclosures of such facts and figures to at least one of the attorneys for the department and had followed the attorney's advice with reference to the making of the reports. The trial court found:

"The evidence fails to disclose any instance where the receiver, in his long period of service in any of these cases, either failed to disclose fully all his receipts and expenditures, or any other facts concerning his receivership, when requested so to do by the School Land Department."

From our examination of the record, we cannot say this finding was clearly against the weight of the evidence.

In its brief, appellant calls our attention to the fact that in June, 1943, Rainbolt was still an employee of the School Land Department, and they say that if in the remaining three months until his resignation, it had been necessary for him to travel about the state obtaining any further information for his reports, "legal provisions had been made and funds were available to reimburse said receiver for any funds necessarily expended in so traveling". This argument diverts attention from the fact that in June, 1943, no demand had been made upon Rainbolt to do any more in connection with his reports on these receiverships than he had already done, and there is no evidence in the record of any such demand being made until sometime in August or September, 1943, just prior to the termination of Rainbolt's employment with the department. It does appear that in August Rainbolt attempted, with the assistance of the department's files on his receiverships, to assist the auditors conducting the investigation for the State Examiner in obtaining a "break down" of the lump sums or totals appearing on his final reports.

The trial court seems to have been of the opinion that if Rainbolt was negligent in the making of his previous reports in these cases and such negligence was the cause of his supplemental reports having to be made, the responsibility therefor belonged to the School Land Department, which previously had not only prescribed the way in which reports should be made, but by those of its officials and attorneys with supervisory powers over such work had condoned or approved his methods over a long period of time. It is apparent that the blame for the lax methods of handling the receiver's reports should fall on the Land Department and its attorneys and not on the receiver.

As to his allowance of fees to Rainbolt's attorneys for their services in connection with the filing and approval of the "supplemental final reports", the trial judge stated in his findings that the reason he authorized Rainbolt to employ his own attorneys for that purpose, upon consideration of the evidence introduced at the hearing on said receiver's contempt citation, was that he deemed it unwise "to force the receiver to longer accept the services of the attorneys provided by the School Land Department, for at that time it appeared that there was a mutual distrust on the part of both the School Land Department, and the receiver, of each other."

This court has previously followed the rule that allowance of compensation to a receiver and his attorneys rests in the sound discretion of the court in which the proceedings were pending and has generally declined to disturb such allowances in the absence of an abuse of such discretion. Russell et al. v. International Supply Co. et al., 194 Okla. 630, 154 P. 2d 57; Brann, Rec., v. Harris et al., 173 Okla. 167, 47 P. 2d 876. The material facts found by the trial court cannot be said to be clearly against the weight of the evidence, nor can the fee allowances in question be said to constitute an abuse of discretion on the basis of such facts.

It would perhaps be unjust to consider the issues solely on the basis of the relative rights of the two parties to these appeals in view of the fact that the costs of the receiverships therein may possibly be reflected in the ultimate judgments against the mortgagors, but we do not believe the trial court's allowance of the fees involved can be deemed an abuse of discretion even from the standpoint of said judgment debtors. In most of the cases, the separate

fees allowed the receiver and his firm of attorneys was $50 each and in only one case was a fee of more the $75 allowed. The fees and compensation allowed are not unreasonable in view of the work involved and (though no such issue has been presented herein) they are in all likelihood less than would have been allowed a receiver not connected in any way with one of the parties to the action. Upon consideration of all of the unusual circumstances involved and in accord with our conclusion that the assignments of alleged error presented herein are without merit, the orders appealed from are hereby affirmed.

HURST, V.C.J., and RILEY, OSBORN, and ARNOLD, JJ., concur. GIBSON, C.J., and BAYLESS and WELCH, JJ., dissent.